**OREGON NATURAL RESOURCES COUNCIL; Umpqua Watersheds, Plaintiffs–Appellants,**

v.

**Jack Ward THOMAS; United States Forest Service; Defendants–Appellees,**

**Douglas Timber Operators; Huffman and Wright Logging Company, Defendants–Intervenors–Appellees.**

No. 95–36256.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1996.

Decided July 31, 1996.

---

Patti A. Goldman and Laura S. Ziemer, Sierra Club Legal Defense Fund, Seattle, Washington, for plaintiffs-appellants.

Robin Michaels, Anne S. Almy and Albert M. Ferlo, Jr., United States Department of Justice, Washington, D.C., for defendants-appellees.

Mark C. Rutzick and Alison Kean Campbell, Mark C. Rutzick Law Firm, Portland, Oregon, for defendants-intervenors-appellees.

Before: REINHARDT, KOZINSKI and FERNANDEZ, Circuit Judges.

Opinion by Judge KOZINSKI; Concurrence by Judge REINHARDT.

KOZINSKI, Circuit Judge.

We consider whether review of certain timber sales is available under the Administrative Procedure Act.

## I

Plaintiffs Oregon Natural Resources Council and Umpqua Watersheds, Inc. are environmental organizations trying to block four sales of timber by defendant Jack Ward Thomas, Chief of the United States Forest Service.[1] Plaintiffs' challenge to two of the sales, Watchdog and Roughneck, has effectively been resolved against them by our recent decision in *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir.1996).[2] We therefore consider in detail only plaintiffs' claims against the two remaining sales, Pinestrip and Snog. Defendant-intervenor Huffman & Wright Logging

Co., Inc. was the high bidder on the Snog sale. Defendant-intervenor Douglas Timber Operators, Inc. is a forest products trade association representing the interests of its members and, in particular, of Boise Cascade Co., the high bidder on the Pinestrip sale.

The Pinestrip and Snog sales are both located in the Upper North Umpqua River Basin in southwestern Oregon, an area "famous for its stunning scenery and its clear, jade-green rushing water." Opening Br. of Plaintiffs–Appellants at 6. Congress has designated over 30 miles of the North Umpqua as a "wild and scenic river." *See* 16 U.S.C. § 1274(a)(95). The North Umpqua also "supports one of the most outstanding native salmonid fisheries on the west coast." Opening Br. of Plaintiffs–Appellants at 6. The Pinestrip and Snog sales also both involve timber growing on land subject to President Clinton's Northwest Forest Plan, commonly referred to as "Option 9."[3] Plaintiffs describe Option 9 as "a comprehensive ... scheme to manage old growth and late successional forests from the Canadian border to northern California in order to maintain the viability of the northern spotted owl and other species associated with old growth." Opening Br. of Plaintiffs–Appellants at 5 n. 1.

According to the amended complaint, the Pinestrip and Snog sales will reduce "viable populations of native aquatic and amphibious species" and "degrad[e] ... aquatic resources," in violation of the National Forest Management Act, 16 U.S.C. § 1604(g)(3), and its implementing regulations, 36 C.F.R. § 219, *et seq.* CR 23 ¶ 17.c. Plaintiffs also claim the sales don't comply with Option 9,

---

**1.** We upheld Chief Thomas's authority to sell the timber as the subdelegatee of the Secretary of Agriculture in *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 702–03 (9th Cir. 1996) (citing 7 C.F.R. §§ 2.19(b)(2), 2.60(a)(2)).

**2.** Plaintiffs' challenge to the Roughneck and Watchdog sales assumed that subsection 2001(k)(1) of the 1995 Rescissions Act, *see* n. 4 *infra*, applied only to timber sale contracts made pursuant to the terms of section 318 of Public Law 101–121. *See* Opening Br. of Plaintiffs–Appellants at 28–30. We rejected this interpretation of subsection 2001(k)(1) in *Northwest Forest Resource.*

**3.** By "Option 9" or "President Clinton's Northwest Forest Plan," we mean the Standards and Guidelines for Management of Habitat for Late–Successional and Old–Growth Forest Related Species Within the Range of the Northern Spotted Owl adopted in the Record of Decision for Amendments to Forest Service and Bureau of Land Management Planning Documents Within the Range of the Northern Spotted Owl (April 13, 1994). *Compare* Am. Comp., CR 23 ¶ 1 *with* Br. of the Federal Appellees at 3.

which is binding under the NFMA, 16 U.S.C. § 1604(i), and its implementing regulations, in particular 36 C.F.R. §§ 219.10(e). CR 23 ¶¶ 1, 18.b.

The amended complaint further alleges that the sales are "arbitrary" and "capricious" under APA § 706(2)(A), because the Forest Service hasn't obtained "information necessary to ensure that viable populations of aquatic and amphibious species will be maintained [despite the sales], and to ensure that the watershed will not be seriously adversely affected [by the sales]." CR 23 ¶ 17.-d.; *see also id.* ¶ 1, Prayer for Relief C. The amended complaint doesn't allege that any statute, apart from the APA, required the agency to obtain this information. Plaintiffs' opening brief in this appeal alleged the sales were also "arbitrary and capricious" because the Forest Service found the sales would not have significant environmental impacts, without explanation and despite a contrary finding by the Service's own expert, Opening Br. of Plaintiffs–Appellants at 25–26, and because the Forest Service has failed to carry out mitigation measures it said it would take in connection with the sales, *id.* at 26–27.

On cross-motions for summary judgment, the district court dismissed plaintiffs' case based on the 1995 Rescissions Act and the APA.[4] Plaintiffs naturally appeal.

## II

The Rescissions Act seeks "to provide harvestable timber to the people who live and work in the region of option 9." S.Rep. No. 17, 104th Cong., 1st Sess. 122 (1995).[5] Thus, Rescissions Act § 2001(d) provides that "[n]otwithstanding any other law ... the Secretary concerned shall expeditiously prepare, offer, and award timber sale contracts" on Option 9 land. Subsection 2001(i) of the Act provides:

> The documents and procedures required by this section for the preparation, advertisement, offering, awarding, and operation of ... any timber sale under subsection (d) shall be deemed to satisfy the requirements of the following applicable Federal laws (and regulations implementing such laws):
>
> ...
>
> (5) The National Forest Management Act ...
>
> ...
>
> (8) All other applicable Federal environmental and natural resource laws.

The Rescissions Act doesn't require any documents or procedures for Option 9 timber sales.[6] The effect of subsection 2001(i), therefore, is to render sufficient under the environmental laws whatever documents and procedures, if any, the agency elects to use for an Option 9 sale. The upshot is that, under Rescissions Act §§ 2001(d) and 2001(i), defendants' decision to proceed with the Pinestrip and Snog sales, and all documents and procedures connected with those sales, were entirely consistent with all federal environmental and natural resource laws.[7]

4. By "the 1995 Rescissions Act," we mean the FY 1995 Emergency Supplemental Appropriations for Disaster Relief and Rescissions Act, Pub.L. No. 104–19, 1995 U.S.C.C.A.N. (109 Stat.) 240 (to be codified at 16 U.S.C. § 1611 note).

5. The Act also seeks "to assist the [Clinton] administration in its commitment to conduct aggressive forest health operations." *Id.* This purpose is evident in the Act's "salvage timber sale" provisions, *see, e.g.,* Rescissions Act §§ 2001(a),(b),(c), which are only indirectly implicated in this appeal, *see* pp. 9342–9344 & n. 10 *infra.*

6. At least not unless the Option 9 sale also happens to be a "salvage timber sale," Rescissions Act § 2001(c), which the Pinestrip and Snog sales are not, *see id.* § 2001(a)(3) (defining "salvage timber sale" as: "a timber sale for which

an important reason for entry includes the removal of disease- or insect-infested trees, dead, damaged, or down trees, or trees affected by fire or imminently susceptible to fire or insect attack. Such term also includes the removal of associated trees or trees lacking the characteristics of a healthy and viable ecosystem for the purpose of ecosystem improvement or rehabilitation, except that any such sale must include an identifiable salvage component of trees described in the first sentence.").

7. Plaintiffs argue that we shouldn't interpret subsection 2001(i) as extending legal sufficiency to the documents and procedures underlying an agency's decision to "operate" a sale. Opening Br. of Plaintiffs–Appellants at 30–31 n. 14; Reply at 12 n. 2. Subsection 2001(d), they observe, only requires the agency to expeditiously "pre-

Plaintiffs' challenges to the sales based on the NFMA and its implementing regulations therefore fail.

Plaintiffs all but concede as much. *See* Opening Br. of Plaintiffs–Appellants at 20–21; Reply Br. of Plaintiffs–Appellants at 4. The "overriding thrust" of their case, they explain, is that the Pinestrip and Snog sales are "arbitrary and capricious" under APA § 706(2)(A), even assuming no other law applies. Reply Br. of Plaintiffs–Appellants at 2. The district court rejected this argument based on the Rescissions Act and APA § 701(a)(2). The latter statute forbids judicial review of agency action "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The district court explained that, as its name suggests, "the APA is merely a vehicle for carrying substantive challenges to court." CR 106, 7. As plaintiffs couldn't point to any "independent, substantive body of law," *id.* at 8, that confined defendants' discretion to go forward with the sales, their decision to sell the timber was "committed to agency discretion" under section 701(a)(2). The district court therefore dismissed the case for lack of subject matter jurisdiction. *Id.* (citing *City of Santa Clara v. Andrus*, 572 F.2d 660, 666 (9th Cir.1978)).

Plaintiffs contend that this analysis renders meaningless Rescissions Act § 2001(f)(1), to the extent it provides that "a timber sale . . . under subsection (d) . . . shall be subject to judicial review."[8] Plaintiffs could be right only if the Rescissions Act insulates subsection 2001(d) timber sales from any judicial scrutiny other than the possibility of "arbitrary and capricious" review under APA § 706(2)(A). So long as the Rescissions Act allows for legal challenges to subsection 2001(d) sales on some basis other

than APA § 706(2)(A), subsection 2001(f)(1) of the Rescissions Act wouldn't be meaningless, even if APA "arbitrary and capricious" review were not available. By its terms, subsection 2001(i) merely extends legal sufficiency to the documents and procedures for subsection 2001(d) sales, under the federal environmental and natural resource laws; it does not foreclose challenges based on other laws. Defendant-intervenors point out that challenges would still be available based on "federal contracting laws such as . . . a claim alleging a failure to include required labor or non-discrimination provisions in a contract; a claim for violations of log export restrictions, small business set-aside provisions . . . and other non-environmental laws." Opposition Br. of Defendant–Intervenor Appellees at 15.

 We agree with the district court, moreover, that subsection 2001(d)'s direction to expedite the preparation, offer and award of Option 9 sales "[n]otwithstanding any other law" is best interpreted as requiring the disregard only of environmental laws, not all laws otherwise applicable to Option 9 sales. We have repeatedly held that the phrase "notwithstanding any other law" is not always construed literally. *See E.P. Paup Co. v. Director, OWCP*, 999 F.2d 1341, 1348 (9th Cir.1993); *In re Glacier Bay*, 944 F.2d 577, 582 (9th Cir.1991); *Golden Nugget, Inc. v. American Stock Exchange, Inc.*, 828 F.2d 586, 588–89 (9th Cir.1987). In *Glacier Bay*, for example, we found that the phrase in one statute, "notwithstanding the provisions of any other law," was not dispositive of whether other statutes applied, because a different section of the first statute arguably made the other statutes applicable. *See* 944 F.2d at 582.

---

pare, offer and award" sales. It follows, according to plaintiffs, that "it is appropriate to limit section 2001(i) legal sufficiency to the documents and procedures leading to those actions and not to extend it to the agency's decision to operate the sale." Opening Br. of Plaintiffs–Appellants at 31 n. 14. We reject this argument, as the language of subsection 2001(i) extends legal sufficiency to documents and procedures underlying the decision to "operate" a sale, and allowing environmentally-based challenges to the operation of Option 9 sales would frustrate one of the Rescissions Act's primary purposes: to enable

the logging of timber on Option 9 land. *See* pp. 9339–9340 *supra*.

8. Subsection 2001(f)(1) provides:

 [A] timber sale to be conducted under subsection (d) . . . shall be subject to judicial review only in the United States district court for the district in which the affected Federal lands are located. Any challenge to such sale must be filed in such district court within 15 days after the date of the initial advertisement of the challenged sale.

■ More so than in *Glacier Bay,* other subsections of the Rescissions Act suggest Congress did not intend the phrase "notwithstanding any other law" to require the agency to disregard all otherwise applicable laws. Thus, subsection 2001(b)(1) provides that "[t]he preparation, advertisement, offering, and awarding of ... contracts [for *salvage* timber sales] shall be performed ... *notwithstanding any other provision of law*" (emphases added). Yet subsection 2001(f)(4)'s standard of review for legal challenges to salvage timber sales provides:

> The courts shall have authority to enjoin permanently, order modification of, or void an individual salvage timber sale if it is determined by a review of the record that the decision to prepare, advertise, offer, award, or operate such sale was arbitrary and capricious or otherwise not in accordance with *applicable law (other than those laws specified in subsection (i)* [i.e., all federal environmental and natural resource laws] ).

(emphasis added). Were subsection 2001(b)'s phrase "notwithstanding any other provision of law" given the broadest possible interpretation, subsection 2001(f)(4)'s allowance for legal challenges to salvage timber sales based on non-environmental laws would be nugatory.

■ Following *Glacier Bay,* and "[m]indful ... of the common-sense principle of statutory construction that sections of a statute generally should be read to give effect, if possible, to every clause," *Heckler v. Chaney,* 470 U.S. 821, 829, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985), we decline to adopt the broadest possible interpretation of "notwithstanding any other provision of law" in subsection 2001(b). Instead, we harmonize subsection 2001(b) with subsection 2001(f)(4) by

interpreting subsection 2001(b) as superceding only the federal environmental and natural resource laws.[9] We further see no reason to believe that Congress intended the phrase "notwithstanding any other law" in subsection 2001(d) to be interpreted differently than the parallel language in subsection 2001(b). Indeed, subsection 2001(i) extends legal sufficiency to the documents and procedures for subsection 2001(d) sales, only under the federal environmental and natural resources laws. We therefore conclude that "notwithstanding any other law" in subsection 2001(d) also directs the disregard only of the federal environmental and natural resource laws, with respect to Option 9 sales. Subsection 2001(f)(1)'s provision for judicial review of Option 9 sales is therefore not superfluous, even if "arbitrary and capricious" review is unavailable under section 706(2)(A) independent of another statute.

Plaintiffs also argue that Rescissions Act § 2001(f)(4) shows "arbitrary and capricious" review is consistent with the Rescissions Act's suspension of the federal environmental and natural resource laws. Opening Br. of Plaintiffs–Appellants at 21. As already discussed, subsection 2001(f)(4) requires a court to review a "salvage timber sale" to determine whether the sale is "arbitrary and capricious or otherwise not in accordance with applicable law (other than those laws specified in subsection (i))." Plaintiffs' reliance on subsection 2001(f)(4) overlooks the fundamental reason why "arbitrary and capricious" review can't occur under the APA if there's no law to apply: Section 706(2)(A) merely provides "[t]he standards to be applied on review.... But before any review at all may be had, a party must first clear the hurdle of § 701(a)." *Heckler,* 470 U.S. at 828, 105 S.Ct. at 1654.[10]

---

**9.** Plaintiffs also argue that subsection 2001(d)'s "notwithstanding any other law" phrase gives defendants so much discretion that it runs afoul of the non-delegation doctrine. But the non-delegation doctrine applies to conferrals of legislative power, while subsection 2001(d) merely authorizes an agency to sell federal property.

**10.** The Forest Service and Chief Thomas recognize that there can be no "arbitrary and capricious" review under APA § 706(2)(A) independent of another statute. But they ask us to hold

that subsection 2001(f)(4) provides a standard of review, not only for "salvage timber sales" as its text indicates, but for other timber sales as well. We decline this invitation to rewrite section 2001(f)(4). The result that Option 9 timber sales aren't subject to arbitrary and capricious review, except to the extent allowed by the APA, is not "demonstrably at odds with the intentions of [the Rescissions Act's] drafters," *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989): It does not bring subsection 2001(f)(4) into conflict

Plaintiffs contend that decisions to sell Option 9 timber aren't "committed to agency discretion" under section 701(a)(2), because they're "typically well-suited to judicial review" and they "traditionally have been reviewable." Opening Br. of Plaintiffs–Appellants at 22. While we have held that these are relevant considerations in a section 701(a)(2) analysis, *Beno v. Shalala*, 30 F.3d 1057, 1067–68 (9th Cir.1994), it's well-settled that the touchstone of reviewability under section 701(a)(2) is whether there's "law to apply," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). As the Supreme Court has repeatedly explained, APA " 'review is not to be had' in those rare circumstances where *the relevant statute* 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " *Lincoln v. Vigil*, 508 U.S. 182, 191, 113 S.Ct. 2024, 2030–31, 124 L.Ed.2d 101 (1993) (quoting *Heckler*, 470 U.S. at 830, 105 S.Ct. at 1655) (emphasis added). Here, there is no "relevant statute," as plaintiffs' "arbitrary and capricious" claim purports to stand free of any other law.[11]

Plaintiffs also point to *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). There, the Court stated:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 43, 103 S.Ct. at 2867. These criteria don't show there can be "arbitrary and capricious" review under APA § 706(2)(A) independent of another statute; they merely define what is arbitrary and capricious assuming judicial review is available. *Cf. Heckler*, 470 U.S. at 828, 105 S.Ct. at 1654. To the extent the *Motor Vehicle Mfrs.* criteria are relevant here, they work against plaintiffs: Had the Forest Service decided not to go forward with Pinestrip and Snog for environmental reasons, defendant-intervenors could well have prevailed in a suit challenging that decision as arbitrary and capricious under APA § 706(2)(A) on the ground that an independent statute, the Rescissions Act, forbade the agency to consider environmental factors. *See, e.g.*, Rescissions Act §§ 2001(d), (i).

Plaintiffs suggest that "arbitrary and capricious" review could be conducted under APA § 706(2)(A), independent of another statute, under the last three criteria set forth in *Motor Vehicle Mfrs. See* Opening Br. of Plaintiffs–Appellants at 25; Reply Br. at 11. Whether an agency has overlooked "an important aspect of the problem," however, turns on what a relevant substantive statute makes "important." In law, unlike religion or philosophy, there is nothing which is necessarily important or relevant. In *Motor Vehicle Mfrs.*, for example, the agency's failure to consider adopting a rule requiring car makers to install airbags in new cars was arbitrary and capricious, as the agency's own data showed this would have saved thousands of lives a year, and the National Highway Transportation Safety Act required the agency to make rules enhancing auto safety at reasonable cost. Moreover, where there is no law to apply for purposes of section 701(a)(2), it is legally irrelevant whether an

---

with any other subsection of the Rescissions Act, or with the Act's manifest intent to eliminate environmental challenges to Option 9 timber sales.

11. This suggests another problem with plaintiffs' free-standing APA "arbitrary and capricious" claims. To have standing under APA § 702, a claimant must show he "suffer[ed] *legal* wrong because of agency action, or [was] adversely affected or aggrieved by agency action *within the*

*meaning of a relevant statute.*" 5 U.S.C. § 702 (emphases added); *see also* III Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise, § 16.9 at 53 (3d ed. 1994) (APA § 702 "require[s] reference to other statutes—agency organic acts—to determine whether a petitioner has standing to obtain review of an action to which the APA applies."). As plaintiffs' "arbitrary and capricious" claims don't invoke any other statute, plaintiffs have no standing to raise them under section 702.

agency has made a "finding" that is "contrary to the evidence before it" or that's "so implausible that it couldn't be ascribed to a difference in view or the product of agency expertise." The court could remand for a new finding but, if there's no law to apply, the agency would be perfectly free to conform its finding to the evidence before it or give a more plausible explanation, yet reach the same ultimate decision it made given the old finding. Section 706 itself requires that a reviewing court take "due account ... of the rule of prejudicial error." *See also Kolek v. Engen,* 869 F.2d 1281, 1286 (9th Cir.1989). But factual errors without law to apply necessarily are harmless.[12]

Plaintiffs' remaining arguments need not detain us long. They observe that subsection 2001(i) and, under our interpretation, subsection 2001(d), only excuse Option 9 sales from complying with the federal environmental and natural resource laws, not the APA. Plaintiffs therefore argue that Option 9 sales remain subject to "arbitrary and capricious" review under the APA despite the Rescissions Act. This argument fails because it's circular. It assumes section 706(2)(A) can provide "law to apply" under section 701(a)(2). But, as explained above, review is unavailable under section 706(2)(A) unless there's law to apply under section 701(a)(2). *See* 5 U.S.C. § 701(a)(2); *Heckler,* 470 U.S. at 828, 105 S.Ct. at 1654.

Lastly, plaintiffs argue that, while the Rescissions Act greatly expanded agency discretion with respect to Option 9 sales, section 706(2)(A) provides for review for "abuse of discretion," 5 U.S.C. § 706(2)(A). This argument overlooks the Supreme Court's reconciliation of section 701(a)(2) with section 706(2)(A) in *Heckler,* 470 U.S. at 830, 105 S.Ct. at 1655. There the Court explained that review is unavailable under section 701(a)(2) where the court would have "no meaningful standard" to apply, precisely because there's no way to say an agency has abused its discretion without reference to such a standard. *Id.*

We thus conclude that the district court properly dismissed plaintiffs' claims; its judgment is therefore **AFFIRMED.** The Opposition Brief of Defendants–Intervenors–Appellees, which was "Received Only," because it was late, is ordered **FILED.**

REINHARDT, Circuit Judge, concurring:

I concur in the result. However, I see no reason to attempt to decide the abstract question whether there can ever be a violation of the APA in the absence of an independent statute that supports the violation. Here, the alleged APA violation is rooted in the environmental concerns that Congress has barred from consideration by the Rescissions Act and constitutes nothing more than an effort to assert prohibited environmental claims in another form. Ingenious as the plaintiffs' argument is, we have no choice but

---

**12.** Our decision in *Inland Empire,* 88 F.3d 697, illustrates this point. Plaintiffs there challenged salvage timber sales as arbitrary and capricious under Rescissions Act § 2001(f)(4). *See* 88 F.3d at 697–701. The argument was that the sales would have an adverse effect on a species of grizzly bears designated as "threatened" under the Endangered Species Act. *Id.* at 697–701. We rejected the claim on alternative grounds: first, that the Forest Service had considered all the factors plaintiffs identified as endangering the grizzly bear and plausibly concluded that the sales wouldn't hurt the bears, *id.* at 701–02; second, and more importantly, that under Rescissions Act § 2001(c)(1)(A), the Forest Service "did not need to consider the effect on the grizzly

bear." 88 F.3d at 701. Subsection 2001(c)(1)(A) provides:

> A document embodying decisions relating to salvage timber sales ... shall, *at the sole discretion of the Secretary concerned and to the extent the Secretary concerned considers appropriate and feasible,* consider the environmental effects of the salvage timber sale and the effect, if any, on threatened or endangered species ....

(emphasis added). Under subsection 2001(c)(1)(A), it wouldn't have mattered whether the Forest Service had "erred" by not considering all the factors plaintiffs identified, because "[t]he Forest Service had discretion to disregard

to reject it. That is all that we need, or should, say or do in this case.[1]

entirely the effect on the grizzly bear." 88 F.3d at 701.

**1.** As to the challenges to the Watchdog and Roughneck sales, which the majority concludes are resolved adversely to appellants by our decision in *Northwest Forest Resource Council v. Glickman,* I prefer the government's analysis: Those sales are simply not subject to the Act.